IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KELVIS JERMAINE COLEMAN,    )
#17576-002,                 )
                            )
        Petitioner,         )
                            )
v.                          )        CASE NO. 2:22-CV-549-ECM-SMD
                            )
UNITED STATES OF AMERICA,   )
                            )
        Respondent.         )

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Kelvis Jermaine Coleman, a federal inmate proceeding *pro se*, has filed a motion under 28 U.S.C. § 2255 to challenge his guilty plea conviction and sentence in *United States v. Coleman et al.*, 2:18-cr-277-ECM-SMD-1.[1] Doc. 1. Coleman contends that his counsel rendered constitutionally ineffective assistance by (1) failing to accurately inform him of the penalty he faced by pleading guilty; (2) failing to raise that issue in support of a subsequent motion to withdraw his guilty plea; (3) failing to object to a notice of enhancement under 21 U.S.C. § 851; (4) failing to move to suppress the evidence against him based on "illegal police activity"; (5) failing to withdraw as his counsel based on a conflict of interest; and (6) negotiating a guilty plea when the Government lacked sufficient evidence to convict him.[2] *Id*. In later filings, he further contends that counsel was ineffective by failing to seek a downward variance based on policy disagreements with the

---

[1] All citations to the underlying criminal action will be denoted as Cr. No.
[2] The order in which Coleman's interrelated grounds for relief are presented herein is not the precise order in which they are presented in the § 2255 motion and accompanying memorandum. *See generally* Doc. 1.

methamphetamine guidelines (Doc. 16) and "failing to move to dismiss the superseding indictment based on the Speedy Trial Act" (Doc. 19).

Upon consideration of the record, and for the following reasons, it is the RECOMMENDATION of the undersigned Magistrate Judge that Coleman's § 2255 motion be DENIED without an evidentiary hearing and that this action be DISMISSED with prejudice. *See* Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## I.    Procedural History

### A.    The Underlying Offense, Indictment, and Superseding Indictment

In November 2017, Alabama law enforcement was investigating narcotics distribution in and around Opp, Alabama. Cr. No. 172 at 4. As part of this investigation, law enforcement utilized a confidential informant ("CI") who reported that Kelvis Coleman sold narcotics from a residence on Kolb Avenue in Opp. *Id*. The CI reported that Coleman was bringing in kilogram weights of marijuana and methamphetamine to the area for distribution. *Id*. On a recorded telephone call with Coleman, the CI discussed purchasing a kilogram of methamphetamine for between $11,000 and $12,000. *Id*.

On March 1, 2018, Coleman picked up the CI—who was wearing a video camera— at a Burger King in Opp. *Id*. When Coleman and the CI arrived at the Kolb Avenue residence, Coleman took the CI to a shed behind the residence where Coleman directed another individual to weigh two ounces of methamphetamine for the CI to purchase. *Id*. After an exchange of money, the CI received the drugs, which were later determined to have a 98 percent purity level. *Id*. On June 12, 2018, the CI arranged another meeting with

Coleman at the Burger King in Opp, at which time the CI purchased 268 grams of 98 percent pure methamphetamine. *Id*. at 5.

Following the second purchase, law enforcement obtained a search warrant for the Kolb Avenue residence, where they subsequently recovered firearms, digital scales, and assorted drug paraphernalia. *Id*. Coleman was arrested and, after being advised of his *Miranda* rights, consented to an interview with investigators. *Id*. In his interview, Coleman admitted that he had been selling roughly two to three ounces of methamphetamine per week since May 2017. *Id*. He also admitted to the June 12, 2018 transaction with the CI. *Id*.

On June 27, 2018, a Middle District of Alabama grand jury indicted Coleman on one count of distribution of more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Doc. 6-1; Cr. No. 20. On October 31, 2018, the Government filed a superseding indictment adding a second methamphetamine distribution count. Doc. 6-2; Cr. No. 61.

### B.    Coleman's Legal Representation

Coleman was initially represented by the Federal Defenders Office, but that representation ended due to an undisclosed conflict. Cr. No. 12. Thereafter, the Court appointed Attorney J. Matthew Williams to represent Coleman. Cr. No. 22. However, at Coleman's request, Mr. Williams filed a motion to withdraw as Coleman's counsel because their relationship "ha[d] become acrimonious and communication ha[d] broken down." Cr. No. 42. Following an ex parte hearing, the presiding Magistrate Judge denied Mr. Williams' motion. Cr. No. 44.

Less than a week before trial was scheduled to begin, Coleman moved for a continuance on the basis that he had retained new counsel, Attorney Amardo Pitters. Cr. No. 57. The presiding District Judge held a hearing on the motion, at which time Mr. Pitters stated:

> Mr. Coleman has retained me, albeit on the eve of trial. [] All indications are he and his family are dissatisfied with appointed counsel[.] Evidently, the communication has broken down such that it appears to be in the best interest of the defendant and his appointed counsel that if the family wants to retain me and I get in at this stage, that the Court consider . . . granting a continuance. Of course, . . . he has agreed to waive any prejudice, if any, with respect to his rights of speedy trial.

Cr. No. 201 at 2–3. Mr. Williams then reiterated to the Court that Coleman refused to communicate with him and instead yelled at him, screamed at him, and told him he was not his lawyer. *Id*. at 5, 11. Thereafter, Mr. Pitters withdrew from the case (Cr. No. 68), and Mr. Williams again moved to withdraw because his relationship with Coleman had become "hostile," Coleman refused to speak with him about his case, and Coleman told him he would "kill him and his family" (Cr No. 71). The District Judge granted Mr. Williams' second motion (Cr. No. 79), and trial was continued. Cr. No. 75.

Next, the Court appointed Attorney Richard Keith to represent Coleman. Cr. No. 80. However, the following day, Mr. Keith filed a motion to withdraw because Coleman refused to speak to him (Cr. No. 83), and the District Judge held an ex parte hearing on the motion (Cr. Nos. 84, 204). At the hearing, Coleman took issue with the fact that "every lawyer [he'd] been getting" told him he should plead guilty rather than proceed to trial. Cr. No. 204 at 6–7. In response, Mr. Keith explained that he had been informed that Coleman wanted to proffer, but then Coleman told him he did not want to proffer, and he was "more

than happy" to represent Coleman at trial if that is how he decided to proceed. *Id*. at 7–8. Nevertheless, Coleman maintained that he "want[ed] another attorney" because Mr. Keith "came over there like I ain't had a chance. I'm going to lose if I did go to trial. He told me my best interest would be to tell and all this mess." *Id*. at 8. The District Judge denied Coleman's request, finding Mr. Keith to be an adequate attorney, and told Coleman that he could either proceed with Mr. Keith or represent himself. *Id*. at 8, 18. Coleman chose to proceed with Mr. Keith, and the motion to withdraw was denied. *Id*. at 18–19.

Thereafter, Mr. Keith moved on behalf of Coleman to again continue trial. Cr. No. 92. The Court ultimately granted the motion, concluding that, "in this case, the ends of justice served by granting a continuance outweigh the interest of the public and Coleman in a speedy trial." Cr. No. 97. During a hearing on the motion, the District Judge noted that the filing of the superseding indictment on October 31, 2018 "did not lead to the continuance of the trial" because "the case would have been continued whether the superseding indictment was handed down or not" based on Coleman's breakdown in communications with his prior attorney and need for a new attorney.[3] Cr. No. 205 at 3–4.

Several weeks later, Mr. Keith filed a second motion to withdraw because Coleman refused to meet with him or speak with him (Cr. No. 98), and the Court held another ex parte hearing on the motion (Cr. Nos. 99–102). At the hearing, Coleman again expressed

---

[3] Coleman's prior counsel moved to dismiss the superseding indictment on the basis that it was retaliatory and violated his Sixth Amendment right to a fair and speedy trial. Cr. No. 70. After a hearing on the matter and upon careful consideration, the Court denied the motion to dismiss, finding that the Government had not acted vindictively and that Coleman's right to a speedy trial was not violated because (1) the first continuance was not presumptively prejudicial; and (2) the second continuance was caused by Coleman himself. Cr. No. 103.

that he did not want Mr. Keith to represent him; the Court again advised Coleman that he could retain his own counsel, represent himself, or proceed with Mr. Keith; and Coleman again chose to proceed with Mr. Keith. Cr. No. 102. Accordingly, Mr. Keith's second motion to withdraw was denied. Cr. Nos. 100, 102.

Approximately one month before the continued trial date, Coleman filed a *pro se* motion to appoint new counsel, claiming that Mr. Keith kept "telling [him] to proffer" and would not file motions that Coleman asked him to file. Cr No. 125. The District Judge held a hearing on Coleman's motion. Cr. Nos. 126, 207. At the hearing, Coleman stated that he asked Mr. Keith to file a motion to suppress, but Mr. Keith "[a]in't filed no motions I asked him to file." Cr. No. 207 at 5. He further stated that Mr. Keith was racist and had made a racist remark to him. *Id*. at 7–8. Mr. Keith wholly denied Coleman's allegations of racism and stated that the motions Coleman had asked him to file, including a motion to suppress, were frivolous. *Id*. at 8–9, 11–12. He further stated that he advised Coleman to cooperate with the Government because Coleman "has a terrible factual case. There's a confession. There's a confidential informant. There's video. He's proffered. They're just terrible facts to go to trial on." *Id*. at 14.

The District Judge then gave Coleman the same choice he had previously been given—he could retain new counsel, represent himself, or proceed with Mr. Keith—and noted that Coleman was in this position because he had threatened his previous attorney. *Id*. at 13, 16–19. Coleman again chose to proceed with Mr. Keith, and the District Judge directed Mr. Keith to file two motions—a motion to suppress and a motion to dismiss for

lack of jurisdiction—Coleman wanted him to file. *Id*. at 20–22. Mr. Keith complied (*see* Cr. Nos. 130, 131), and both motions were subsequently denied.

### C.    Coleman's Guilty Plea, Motion to Withdraw, and Sentence

On the day of trial, with jury selection nearly complete, Coleman changed his mind and decided to plead guilty. Cr. Nos. 149, 154. At his plea hearing, regarding his decision to change his plea, the following colloquy took place:

> THE COURT: [] Has anyone attempted in any way to force you to plead guilty in this case, Mr. Coleman?
> THE DEFENDANT: Yes.
> THE COURT: Okay. How is that? Did anyone force you to plead guilty?
> THE DEFENDANT: Yes.
> THE COURT: Okay. Explain that to me.
> THE DEFENDANT: By my counsel being ineffective and, you know, kept telling me I need to plea, or I won't never get to see my family.
> THE COURT: Okay. I am not going to accept your guilty plea unless you tell me that you are doing this because you want to do it. No one is allowed to force you to plead guilty. This has to be a decision that you make. No one can make it for you. []
> THE DEFENDANT: Yeah. Nobody done forced me.
> THE COURT: Nobody forced you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: So you're doing this because you've chosen to plead guilty?
> THE DEFENDANT: Yes.
> THE COURT: And I know you have some issues with your counsel; but as far as deciding to plead guilty, you chose to plead guilty. You're choosing to plead guilty.
> THE DEFENDANT: Yes.
> THE COURT: All right. Are you pleading guilty of your own free will?
> THE DEFENDANT: Yes.

Cr. No. 154 at 6–7.

Regarding his mandatory maximum and minimum penalties, the following colloquy took place:

THE COURT: [] So, Mr. Coleman, the superseding indictment which we discussed earlier contains two counts. The indictment charges that on or about June 12th, 2018, and March 1, 2018, in Covington County, Alabama, within the Middle District of Alabama, you knowingly and intentionally distributed in excess of 50 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21 United States Code Section 841(a)(1). []

The maximum penalty for conviction on Count 2 of the superseding indictment is a term of imprisonment of not less than 10 years and not more than life, a fine of not more than $10 million, or both the imprisonment and the fine, a term of supervised release of not less than five years and no more than life, and a special assessment fee of $100.

If you have a prior drug felony, Mr. Coleman, the limits of punishment for Count 2 increase to a term of imprisonment of not less than 20 years and not more than life, a fine of not more than $20 million, or both imprisonment and fine, a term of supervised release of not less than 10 years and not more than life, and a special assessment fee of $100.

Finally, Mr. Coleman, under Count 2, if you have two prior drug felony convictions, the maximum penalty for conviction on Count 2 increases to a term of imprisonment of not less than life, a fine of not more than $20 million, or both the imprisonment and the fine, and a special assessment fee of $100. Does the government believe that I have stated the maximum penalties correctly?

MR. IVY: As relates to Count 2, Your Honor, no. And the reason being the First Step Act was applied following this indictment, and therefore, the penalties changed. [] My understanding of the penalties now for Count 2, with one prior drug felony, will be not less than 15 years' imprisonment, not more than life, not more than a $20 million fine or both, not less than 10 years of supervised release, not more than life, a $100 assessment fee, the Victim and Witness Protection Act, as well as an eligibility for federal benefits for up to 10 years after conviction.

THE COURT: Okay. Mr. Keith, do you agree with that modification of the maximum penalties for Count 2?

MR. KEITH: I do, Your Honor.

THE COURT: Okay. So do you understand – and this would be based primarily on discussion with your counsel. Do you understand the limits of punishment in each count of the superseding indictment that we've been talking about, Mr. Coleman?

THE DEFENDANT: Yes. []

> THE COURT: And by pleading guilty today – we discussed those maximum and minimum penalties. Do you understand that by pleading guilty, you face those possible maximum and minimum penalties?
>
> THE DEFENDANT: Yes. []
>
> THE COURT: Do you understand that I will not be able to determine the advisory guideline range for your case until after a presentence report has been completed and you and the government have had an opportunity to challenge the facts and application of the guidelines as recommended by the probation officer in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you also understand, Mr. Coleman, that the sentence that I would ultimately impose on you may be different from any estimate that Mr. Keith and you may have previously discussed?
>
> THE DEFENDANT: Yes.

*Id*. at 7–11.

On October 3, 2019, Coleman filed a *pro se* motion to withdraw his guilty plea, claiming that Mr. Keith had "inherently coherced [sic] [him] to plead guilty to charges [he's] not guilty of." Cr. No. 156. He claimed that another one of Mr. Keith's clients had in fact committed the crime for which he was charged and that Mr. Keith knew about it. *Id*. The Court held a hearing to address Coleman's motion (Cr. No. 187), and Coleman retained new counsel—Attorney Abner Riley Powell, IV—to represent him (Cr. No. 163). At the hearing, Mr. Powell informed the Court that his firm had only been retained the day prior and, as such, he sought to continue the hearing to "flesh out [Coleman's *pro se*] motions" and "get up to speed and file the appropriate motions with the Court." Cr. No. 187 at 3–4. The District Judge denied that request. *Id*. at 4.

Powell then stated on behalf of Coleman:

> [H]e said that he was coerced into pleading guilty. Based on the pleadings and based on my discussions with Mr. Coleman, and also my discussions with Mr. Keith, I think coerced may be an awfully strong word. I think that what Mr. Coleman intended to say was that during the jury striking, he was

told or urged by Mr. Keith multiple times, over and over and over again, that you have to take this plea. You know, you have to do the plea. You have to take it. And he had never had an opportunity to speak with Mr. Keith about the actual facts of the case [] and what the defendant's own involvement was in the case and about potential alibis and other people that could be pointed out that actually sold the drugs.

Cr. No. 187 at 6. In response, the District Judge noted:

I saw a video of Mr. Coleman confessing to distributing drugs, and I saw a video of Mr. Coleman that was taken, apparently, by a confidential information, distributing drugs. [W]hen Mr. Coleman decided to plead guilty the day of trial, . . . it was my assessment of him that he had finally realized that there was no way he was going to convince 12 normal people that he did not distribute these drugs. [] [T]he way I read the situation at the time was that Mr. Coleman did, in fact, have no choice; but the reason he had no choice is because it was obvious to everybody that he was going to be found guilty by a jury. [T]he choice that he had was to go forward and be found guilty by a jury or to plead guilty.

*Id*. at 7–8. Mr. Powell conceded that Coleman withdrawing his guilty plea "might not be the smartest thing for him to do. [] You know, it might be, in fact, to use a phrase, really, really stupid for him to withdraw a plea and move forward with a trial." *Id*. at 9. He later reiterated that "[i]t may not be the smartest thing for Mr. Coleman, based on the evidence or his past history, but I think that he has asked you today for the opportunity to have that trial and, you know, I think that the law supports that." *Id*. at 17.

Because Coleman's motion alleged that another client of Mr. Keith's—Kyree Lacey—had sold the drugs he was charged with distributing, the District Judge asked to hear the recording of the telephone conversation setting up the drug deal as well as see the video of the transaction. *Id.* at 20–22. As to the telephone conversation, the District Judge noted, "I can find that that's, obviously, Mr. Coleman's voice on the phone. That's clearly him speaking." *Id*. at 22. As to the video, the Government established "a clear shot of

Coleman" at 4:59 and "a clear shot of a bag of methamphetamine" at 5:01, and the District

Judge agreed that "Mr. Coleman is, obviously, on this video." *Id.* at 23, 27.

The District Judge then asked Mr. Keith if he had looked into whether there was a

conflict with representing both Coleman and Lacey and held a brief discussion off the

record with Mr. Keith and Mr. Powell. *Id.* at 29–30. Upon conclusion of that discussion,

the District Judge stated:

> [B]ased on that off-the-record discussion, I'll just say that I'm satisfied that
> counsel did not have an apparent conflict. Certainly not a conflict that he
> could have identified or realized existed based on his joint representation of
> these two defendants. So I don't find that he had a conflict.
>
> Now he does, in fact, represent Kyree Lacey, so it is true that he would not
> have been in a position to call Kyree Lacey as a witness in this case. But had
> he known that that was even a possibility, the Court finds that he would have
> moved to withdraw from this case especially. So I do not find that he had a
> conflict and should have moved to withdraw. In fact, I find the opposite.

*Id.* at 30.

The District Judge ultimately concluded:

> [W]hat I see in this case is we've got videos with Mr. Coleman selling drugs.
> We've got a confession by Mr. Coleman selling drugs. We've got a telephone
> call where he sets up the drug deal. We've got a proffer where he admits to
> selling drugs. It just seems ridiculous to suggest that his counsel would be
> ineffective for strongly urging him to plead guilty."

*Id.* at 48. The Judge then denied Coleman's motion to withdraw his plea. *Id.* at 51–54.

Prior to sentencing, United States Probation produced a Presentence Investigation

Report ("PSR"). Cr. No. 172. The PSR reported a total offense level of 36 and a criminal

history category of IV, resulting in a guidelines range of 300 months to 327 months of

imprisonment. *Id.* at 7, 12, 19. The mandatory minimum sentence of 25 years'

imprisonment was stated multiple times throughout the PSR, including on the first page. *Id*. at 1, 19. At the subsequent sentencing hearing, the District Judge asked Coleman if he had an opportunity to "look at [the PSR] and talk about that with [his] lawyer," and Coleman responded, "Yes, sir." Cr. No. 184 at 6. The District Judge then asked whether there were any objections to the PSR, and none were raised. *Id*. at 7. The District Judge then stated that the "the guideline range is from 300 to 327 months" and no objections were raised to the Court's calculation. *Id*. Finally, the Court sentenced Coleman to the minimum term of imprisonment of 300 months, or 25 years, and no objections were raised to that sentence. *Id*. at 23; Cr. No. 170.

### D.    Coleman's Appeal

Coleman appealed his guilty plea conviction and sentence, arguing that (1) this Court abused its discretion by refusing to appoint another attorney after his relationship with Mr. Keith had broken down; and (2) his plea was not knowing and voluntary because he was misinformed of the minimum sentence he faced. Doc. 6-9. The Eleventh Circuit affirmed, determining that this Court (1) "did not abuse its discretion in denying Coleman's motion to appoint new counsel because good cause did not exist to replace Keith"; and (2) "did not plainly err because, while it committed an error by failing to ensure Coleman's understanding that he was subject to a 25-year statutory minimum on one of his offenses . . . Coleman cannot show that the error affected his substantial rights because he cannot show a reasonable probability that, but for the error, he would not have pled guilty." Cr. No. 216. The Eleventh Circuit reasoned:

> While Coleman argues extensively that his motion to withdraw demonstrated such a reasonable probability, Coleman did not state as grounds for withdrawal—either in the motion or the extensive proceedings that followed—that he was misinformed as to what the applicable statutory range of imprisonment was. Even after Coleman's [PSR] made clear to him the applicable mandatory minimum, he failed to object to the [PSR] or argue at any point in the withdrawal proceedings that he was misinformed as to the applicable statutory range of imprisonment. [] Further, Coleman's insistence on going to trial does not support a finding that his substantial rights were affected by the district court's statutory-minimum error, as nothing in the record suggests that that insistence related to the statutory penalties applicable to his offense. Thus, there is nothing in the record to suggest that but for the error he alleges on appeal, Coleman would not have pled guilty.

*Id*. at 9–10. Finally, the Eleventh Circuit noted that this Court "properly rejected Coleman's argument that Keith coerced him into pleading guilty, because Keith employed his best professional judgment in urging him to do so in light of the extensive evidence against him, an assessment even subsequent attorney Powell agreed with[.]" *Id*. at 12.

## II. Coleman's § 2255 Motion

Coleman, proceeding *pro se*, timely filed the present action under 28 U.S.C. § 2255 asserting that his counsel provided ineffective assistance by failing to accurately inform him of the penalty he faced by pleading guilty; failing to raise that issue in support of his subsequent motion to withdraw; failing to object to the notice of enhancement; failing to move to suppress the evidence against him; failing to withdraw as his counsel based on a conflict of interest; and negotiating a guilty plea when the Government lacked sufficient evidence to convict him. Doc. 1. On September 26, 2022, Mr. Keith filed an affidavit addressing the allegations in the § 2255 motion. Doc. 5. On October 14, 2022, the Government filed a response in opposition to the § 2255 motion with accompanying exhibits. Doc. 6. On January 12, 2023, Coleman filed a reply. Doc. 14. Coleman later filed

a supplemental affidavit in support of his motion (Doc. 18) as well as two supplemental briefs attempting to raise additional grounds for relief (Docs. 16, 19). The § 2255 motion is now ripe for consideration.

## III.   Discussion

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Ineffective Assistance of Counsel Claim

A claim of ineffective assistance of counsel is evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). An attorney is considered constitutionally ineffective only if (1) his or her "performance was deficient" *and* (2) that "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *see also Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see Chandler*, 218 F.3d at 1315 ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."). Scrutiny of counsel's performance is highly deferential, and the court indulges a strong presumption that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314.

Under the prejudice component, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. However, the prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the results of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). In the event of a guilty plea, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*.

Unless a petitioner satisfies both prongs of the *Strickland* test, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *see Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### i.    Coleman's counsel was not constitutionally ineffective for failing to accurately inform Coleman of the penalty he faced by pleading guilty.

Coleman first contends that Mr. Keith told him it was in his best interest to plead guilty and, if Coleman did so, Mr. Keith "would ask the judge to sentence [him] to the mandatory minimum of 15 years." Doc. 1 at 16. Coleman claims that "had counsel not misled him by telling him that he could get the mandatory minimum sentence of 15 years, when the mandatory minimum was 25 years, he would not have pleaded guilty, but would have insisted on going to trial." *Id*. at 18. However, the record as a whole belies this argument.

Coleman is correct that the applicable mandatory minimum sentence was not stated at his plea hearing. During that hearing, the Court informed Coleman that, under 21 U.S.C. § 841, the penalty for individuals with *one* prior serious drug conviction was "not less than 15 years' imprisonment, not more than life" but did not also state that the minimum sentence for an individual with *two* prior drug convictions was 25 years. *See* Cr. No. 154 at 9; *see also* 21 U.S.C. § 841(b)(1)(A). On appeal, the Eleventh Circuit acknowledged that such failure constituted an error under Federal Rule of Criminal Procedure 11(b)(1)(I).

Doc. 6-10 at 8. However, it nevertheless affirmed Coleman's guilty plea conviction "because he [could not] show a reasonable probability that, but for the error, he would not have pled guilty." *Id*.

The Eleventh Circuit reasoned that "Coleman did not state as grounds for withdrawal—either in the motion or the extensive proceedings that followed—that he was misinformed as to what the applicable statutory range of imprisonment was" and "[e]ven after Coleman's [PSR] made clear to him the applicable mandatory minimum, he failed to object to the [PSR] or argue at any point in the withdrawal proceedings that he was misinformed as to the applicable statutory range of imprisonment." Cr. No. 216 at 9. Thus, the Eleventh Circuit concluded that "there is nothing in the record to suggest that but for the error he alleges on appeal, Coleman would not have pled guilty." *Id*. at 10.

The same principles apply here. Even assuming Mr. Keith acted unreasonably by not ensuring that the applicable mandatory minimum was clear to Coleman at or prior to the plea hearing[4], Coleman nevertheless fails to satisfy the prejudice component of an ineffective assistance of counsel claim. Under the prejudice component, Coleman must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Molina-Martinez v. United States*, 578 U.S. 189 (2016). Specifically, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

---

[4] Mr. Keith avers that, before the plea hearing, he discussed a plea agreement with Coleman that clearly stated the correct mandatory minimum. *See* Doc. 5.

Like in his direct appeal, Coleman contends that had he known the mandatory minimum was 25 years rather than 15, he would not have pleaded guilty. Doc. 1 at 18. However, as already explained by the Eleventh Circuit, "Coleman did not state as grounds for withdrawal . . . that he was misinformed as to what the applicable statutory range of imprisonment was" and "[e]ven after Coleman's [PSR] made clear to him the applicable mandatory minimum, he failed to object to the [PSR] or argue at any point in the withdrawal proceedings that he was misinformed as to the applicable statutory range of imprisonment." *See* Cr. No. 216 at 9.

Indeed, during the plea hearing, Coleman confirmed his understanding that the Court could not "determine the advisory guideline range for [his] case until after a presentence report has been completed and [he] had an opportunity to challenge the facts and application of the guidelines" and that "the sentence [the Court] would ultimately impose . . . may be different from any estimate that Mr. Keith and [he] previously discussed." Cr. No. 154 at 11; *see also Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (rejecting ineffective assistance of counsel claim and noting that "[w]hile there [was] some question as to whether counsel expressly promised Patel that he would receive a specific sentence, the record demonstrates that Patel did not mention this promise during the plea colloquy, and, instead, stated that he understood that his sentence could be different from what counsel had advised").[5] Thus, Coleman was on notice that a particular sentence

---

[5] "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) (citation omitted); *see* 11th Cir. R. 36-2. The Federal Rules of Appellate Procedure expressly allow citation to unpublished federal judicial dispositions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a). The undersigned finds persuasive the unpublished decisions cited herein.

was not guaranteed and that he could challenge the PSR prior to sentencing, but he did not do so. Moreover, at his sentencing hearing, he affirmed that he had reviewed the PSR with his counsel and had no objections. Cr. No. 184 at 6. The District Judge specifically asked if there were any objections to the PSR, the "guideline range [of] 300 to 327 months," or to Coleman's ultimate sentence of 300 months, and no objections were raised. *Id*. at 7, 23.

Because Coleman wholly failed to challenge the applicable statutory minimum even after it was clearly provided in the PSR and at his sentencing hearing, and because he confirmed his understanding that his ultimate sentence may differ from any projected sentence by Mr. Keith, there is nothing in the record—other than his own unsupported assertions—to suggest that he would not have pleaded guilty if he had known the mandatory minimum was 25 years rather than 15. *See Rosin v. United States*, 786 F.3d 873, 878 (11th Cir. 2015) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence.") (citations omitted). Accordingly, Coleman has not established the prejudice necessary for an ineffective assistance of counsel claim, and this claim is due to be denied without an evidentiary hearing. *See, e.g., Dickson v. Wainwright*, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel.") (citation omitted).

ii.  **Coleman's counsel was not constitutionally ineffective for failing to raise the above mandatory minimum issue in support of Coleman's *pro se* motion to withdraw his guilty plea.**

Coleman next contends that, at the hearing on his *pro se* motion to withdraw his guilty plea,

> neither Mr. Keith nor Mr. Powell offered any argument for the withdrawal of [his] guilty plea except for the arguments . . . made in his pro se motion. They either did not review the transcript[] or did not know that the 15-years was incorrect or chose not to raise the issue. [] [T]here is a reasonable probability that [Coleman] would have been allowed to withdraw his plea if they had made the court aware that [he] was misinformed of the mandatory minimum.

Doc. 1 at 15–16. However, this claim lacks merit for the same reasons discussed above. Coleman was given notice and opportunity to object to the PSR prior to sentencing, and he did not. At no time during his withdrawal proceedings, which took place after he received clear notice of the statutory minimum, did he raise this issue. At no time prior to being sentenced, after affirming to the Court that he had reviewed the PSR with counsel and after the Court reiterated the 300-month minimum, did he raise this issue. Thus, there is simply nothing substantive in the record to suggest that but for counsel's purported error, Coleman would not have pleaded guilty. Accordingly, Coleman has again failed to establish prejudice, and this claim is due to be denied without an evidentiary hearing.

iii.  **Coleman's counsel was not constitutionally ineffective for failing to object to the enhancement notice.**

Coleman next contends that, "[a]lthough the government filed a timely 851 enhancement notice, the document did not properly notify [him] of the penalty he was facing" and "counsel was ineffective for allowing [him] to plead guilty to 851 enhancement

in light of these facts." Doc. 1 at 19–20. Once again, for the same reasons discussed above, this claim lacks merit. No matter what penalty Coleman initially believed—whether reasonably or unreasonably—may apply to him, he was informed of the correct mandatory minimum sentence prior to his withdrawal proceedings and prior to sentencing, and he failed to raise the issue at any point. Accordingly, Coleman has once again failed to establish prejudice, and this claim is due to be denied without an evidentiary hearing.

iv.    **Coleman's counsel was not constitutionally ineffective for failing to move to suppress evidence based on illegal police activity.**

Coleman next contends that his "counsel should have sought a suppression motion to suppress evidence of the controlled buy conduct by CI Jessie D. Stone" because "allowing the CI to participate in a controlled buy resulted in the violation of the parole board contract with the CI inasmuch as the contract precludes the CI from engaging in criminal conduct." Doc. 1 at 22. However, suppression of evidence is a "last resort, justified *only* where the deterrence benefits of suppression outweigh the substantial social costs of ignoring the reliable, trustworthy evidence bearing on guilt or innocence." *United States v. Green*, 981 F.3d 945, 957 (11th Cir. 2020) (citing *United States v. Smith*, 741 F.3d 1211, 1218 (11th Cir. 2013)). If no constitutional violation occurred, "then counsel is not obligated to move to suppress the evidence or dismiss the indictment and a defendant is not prejudiced by counsel's failure to do so." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) and *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260–61 (11th Cir. 2006)).

Coleman wholly fails to allege that his constitutional rights were violated by the CI purportedly violating a condition of his own parole. As such, Coleman's counsel was not ineffective for failing to file a motion to suppress on that basis, as any such argument would have been meritless.[6] *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance.") (citing *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]")). Accordingly, this claim is due to be denied without an evidentiary hearing.

>    **v.    Coleman's counsel was not constitutionally ineffective for negotiating and encouraging a guilty plea in light of the evidence.**

Coleman next contends that his counsel should not have negotiated a plea or encouraged him to plead guilty "because there was insufficient evidence to make a submissible case to a trier of fact." Doc. 1 at 27. However, the record makes clear that this argument is meritless. Following his arrest and after being read his *Miranda* rights, Coleman admitted to law enforcement that he had been selling roughly two to three ounces of methamphetamine a week since May 2017 and admitted to the June 12, 2018 transaction with the CI. Cr. No. 172 at 5. There is a recorded telephone conversation in which Coleman's voice can "obviously" be heard setting up the drug deal with the CI. Cr. No. 187 at 22. There is a video in which the Government established "a clear shot of Coleman" at 4:59 and "a clear shot of a bag of methamphetamine" only two seconds later at 5:01. *Id.*

---

[6] Mr. Keith filed a motion to suppress on other grounds, which the Court subsequently denied. Cr. No. 130. Strategic decisions such as this "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Glover v. United States*, 522 F. App'x 720, 723 (11th Cir. 2013) (citing *Strickland*, 466 U.S. at 690).

at 23, 27. Nowhere in his § 2255 motion does Coleman challenge his prior admissions or the fact that he can be heard and seen in the telephone and video recordings. Instead, he claims that "[w]hile it could have been reason for the government to have charged [him] with aiding and abetting the distribution, the evidence simply does not support that [he] gave the CI any drugs." Doc. 1 at 27.

To the extent he claims that the Government's evidence was sufficient to prove he aided and abetted the distribution of drugs, but another individual physically handed the drugs to the CI, this distinction is legally irrelevant. It is well-settled that aiding and abetting "is an alternative charge in every [federal criminal indictment], whether explicit or implicit, and the rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *Bourtzakis v. United States Att'y Gen.*, 940 F.3d 616, 622 (11th Cir. 2019) (citations omitted); *see also* 18 U.S.C. § 2(a) (providing that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal"). In other words, evidence sufficient to prove Coleman aided and abetted the distribution of drugs is also sufficient to prove distribution as charged in the indictments.

Mr. Keith attested that he encouraged Coleman to plead guilty because he "has a terrible factual case. There's a confession. There's a confidential informant. There's video. He's proffered. They're just terrible facts to go to trial on." Cr. No. 207 at 14. Mr. Powell later agreed that Coleman withdrawing his guilty plea "might not be the smartest thing for him to do. [] You know, it might be, in fact . . . really, really stupid for him to withdraw a

plea and move forward with a trial." Cr. No. 187 at 9. Most notably, the Eleventh Circuit specifically found that "Mr. Keith employed his best professional judgment in urging [Coleman] to [plead guilty] in light of the *extensive evidence* against him, an assessment even subsequent attorney Powell agreed with[.]" *Id*. at 12 (emphasis added). Accordingly, Mr. Keith was clearly not ineffective for negotiating and encouraging a guilty plea in light of the evidence, and this claim is due to be denied without an evidentiary hearing.

vi.    **Coleman's counsel was not constitutionally ineffective for failing to withdraw based on a conflict of interest.**

Coleman next contends that his counsel was ineffective because he also represented an individual named Kyrie Lacey, who Coleman contends distributed the drugs to the CI. Doc. 1 at 23–25. Coleman claims that "any competent counsel who was free of conflict would have known [Coleman] at best could only be charged as an aider and abettor to the distribution even if Kyrie Lacey testified [Coleman] instructed him to distribute the drugs" but "counsel forewent this defense because Kyrie Lacey was under the representation of counsel in a unrelated case[.]" *Id*. at 26.

"A defendant claiming that his counsel rendered ineffective assistance due to a conflict of interest must . . . establish an 'actual conflict,' i.e., a 'conflict [that] adversely affected his counsel's performance.'" *United States v. Williams*, 902 F.3d 1328, 1332 (11th Cir. 2018). To demonstrate adverse effect, Coleman must show a "plausible alternative defense strategy or tactic that might have been pursued." *Id*. (citation omitted). To be "plausible," the alternative strategy or tactic must have been "reasonable under the facts. . . . [But Coleman] need not show that the defense would necessarily have been successful

[if the alternative strategy or tactic] had been used[;] rather he only need prove that the alternative possessed sufficient substance to be a viable alternative." *Id*.

> As an initial matter, the previous District Judge emphatically determined that

> the Court is absolutely confident and finds it is a one hundred percent certainty that if Mr. Keith thought he had an even remote possibility of a conflict in this case, he would have moved to withdraw at the first opportunity, and he didn't do so. So there was no conflict.

Cr. No. 187 at 50. However, even if the Court were to assume a conflict existed to some degree, to the extent Coleman alleges Mr. Keith should have called Lacey as a witness to testify that he was the one who handed the CI the drugs and that Coleman was merely "an aider and abettor to the distribution," that is not a viable or plausible alternative strategy. As explained above, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). If Lacey were called to testify that he distributed the drugs to the CI and Coleman merely "instructed" him to do so, as Coleman projects, that testimony would not demonstrate Coleman's innocence—it would do the opposite. Such tactic cannot be considered reasonable.

Thus, absent allegations of an actual conflict, the undersigned does not find that Mr. Keith was ineffective for failing to withdraw based on a conflict of interest. This claim is due to be denied without an evidentiary hearing. *See Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("A district court . . . need not hold an evidentiary hearing [on an ineffective assistance of counsel claim] if it can be conclusively determined from the record that petitioner was not denied effective assistance of counsel.") (citation omitted).

### vii.    Coleman's counsel was not constitutionally ineffective for failing to seek a downward variance based on policy disagreements with the methamphetamine guidelines.

Coleman next contends that his counsel was ineffective by "failing to object to the 50 grams or more of 'actual' methamphetamine that was being attributed to him by the Government, and which resulted in an increase in Coleman's mandatory statutory sentence." Doc. 16 at 2. He argues that counsel "should have requested a variance based on policy disagreements with the methamphetamine guidelines" and that he "entered into a plea agreement with the Government that he otherwise would not have if he had known he was facing a Guidelines policy that had been rejected by this Court." *Id*. at 3.

As an initial matter, Mr. Keith moved for a downward variance from the applicable guideline range based on Coleman's individual characteristics—specifically, his psychological diagnoses, intellectual functioning, and drug dependency. Cr. Nos. 159, 160. In other words, counsel chose to base a downward variance request on Coleman's individual characteristics, the more typical request, as opposed to policy disagreements regarding the methamphetamine guidelines. *See United States v. Trejo*, 624 F. App'x 709, 711 & 713–14 (11th Cir. 2015) (recognizing that district courts have the discretion to vary downward based on individual characteristics, the more typical request, and on policy disagreements with the methamphetamine guidelines). There is nothing in the record to suggest that counsel was deficient in choosing to focus on Coleman's individual characteristics rather than policy disagreements or that "no competent counsel would have taken [that same] action." *Chandler*, 218 F.3d at 1315; *see also Adams*, 709 F.2d at 1445 ("Even if in retrospect the strategy appears to have been wrong, the decision will be held

ineffective only if it was so patently unreasonable that no competent attorney would have chosen it.").

Nor does the record suggest that Coleman was prejudiced by Mr. Keith's failure to raise such policy disagreements. Indeed, Coleman was sentenced to the mandatory minimum of 25 years, and this Court lacks statutory authority to impose a sentence below the mandatory minimum expect in specific instances that do not apply here. *See United States v. Lamar*, 687 F. Supp. 2d 1316, 1320 (M.D. Ala. 2009) (holding that there is no statutory authorization for downward variances below statutory mandatory minimum sentences pursuant to § 3553(a)); *see also United States v. Castaing-Sosa*, 530 F.3d 1358, 1361 (11th Cir. 2008) (finding that only two statutory provisions authorize sentences below statutory mandatory minimums—§ 3553(e) for substantial assistance and § 3553(f) for offenses meeting enumerated "safety valve" criteria). Accordingly, Mr. Keith was not ineffective for failing to raise policy disagreements with the methamphetamine guidelines, and this claim is due to be denied without an evidentiary hearing.

### viii.    Coleman's counsel was not constitutionally ineffective for failing to move to dismiss the superseding indictment based on the Speedy Trial Act.

Finally, Coleman contends that his counsel was ineffective by "failing to move to dismiss the superseding indictment based on the Speedy Trial Act." Doc. 19. This argument wholly lacks merit because, despite Coleman's assertion to the contrary, Coleman's counsel did in fact move to dismiss the superseding indictment on the basis that it violated his Sixth Amendment right to a fair and speedy trial. Cr. No. 70. After a hearing on the matter and upon careful consideration, the Court denied the motion to dismiss, finding in

relevant part that Coleman's right to a speedy trial was not violated because (1) the first continuance was not presumptively prejudicial; and (2) the following continuance was caused by Coleman himself. Cr. No. 103. Accordingly, Coleman's counsel was clearly not ineffective in this regard, and this claim is due to be denied without an evidentiary hearing.

## IV.    Conclusion

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Coleman's 28 U.S.C. § 2255 motion be DENIED without an evidentiary hearing and this case be DISMISSED with prejudice.

It is further ORDERED that, on or before **September 17, 2025**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 3rd day of September, 2025.


/s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE